BIRDSEY *v.* GREENE.

No. 9021. MARCH 3, 1933.

*Turpin & Lane,* for plaintiff.

*Brock, Sparks & Russell,* for defendant.

ATKINSON, J. The case of *White* v. *Montgomery,* 58 *Ga.* 204, was one in which a tenant sued his landlord for damages on account of injury to goods in his store, caused by overflow from a water-closet in a boarding-house conducted by another tenant of the same landlord in the upper story of the building. The evidence was conflicting as to what caused the overflow, whether it was from improper construction and repair or from improper and negligent use of the closet by the upper tenant and guests of the hotel. It was held by this court: "1. It is the duty of the landlord, when he rents a tenement to a tenant at full price, to make it suitable for the purpose for which it is rented, unless the tenant knows as much about its condition as he does; and he must, upon notice of any defect, keep it, by repairs, in such condition as to be suitable for such use. 2. The tenant is not the agent of the landlord, in the sense that the latter is responsible for the damages which result to third persons from the illegal or negligent use of the rented premises by the former; the landlord is responsible for any damage which may flow from the defective construction of the tenement or from his failure to keep it in proper repair, but if it be properly con-

structed and kept by the landlord in proper repair, the tenant alone is responsible for his bad or negligent use of a thing good in itself, and kept good by the landlord, but made bad and working damage by the tenant's improper or negligent use of it." When the Code of 1895 which was adopted by the legislature and given the effect of a statute (*Central of Georgia Railway Co.* v. *State*, 104 *Ga.* 831, 31 S. E. 531, 42 L. R. A. 518), there was inserted for the first time § 3118, which declared: "The landlord, having fully parted with possession and right of possession, is not responsible to third persons for damages resulting from the negligent or illegal use of the premises by the tenant. But he is responsible to others for damages arising from defective construction, or for damages from failure to keep the premises in repair." At the margin of this section of the Code as adopted are the citations: "58 *Ga.* 204, 63 *Ga.* 615." This provision of the Code of 1895 was identically embodied in the Civil Code of 1910 as § 3694. The Code of 1910 was also adopted by the legislature and given the effect of a statute. Prior to the adoption of the Code of 1910, in *Ocean Steamship Co.* v. *Hamilton*, 112 *Ga.* 901 (38 S. E. 204), which was a suit against a landlord for damages for injuries to a servant of his tenant, arising from a defect in the rented premises of which the landlord had no knowledge and which he had not been notified to repair, it was held erroneous to grant a nonsuit. It was said in the opinion: "While under section 3118 of the Civil Code a landlord is responsible to a servant of his tenant 'for damages arising from defective construction, or for damages from failure to keep the premises in repair,' he is not liable because of a failure to repair a defect of which he neither knew nor ought in the exercise of reasonable diligence to have known. Properly construed, this section does not make a landlord responsible as an insurer, but liable only in the event he fails to comply with his statutory duty of keeping the premises in repair. . . As we understand it, the section now under consideration was designed simply to embody a rule of law which was well settled and well understood at the time of its codification, and not to enlarge the duty devolving upon landlords with respect to the making of repairs, nor to impose upon them a harsher rule of responsibility than that to which they were already subject." The case of *Crook* v. *Foster*, 142 *Ga.* 715 (83 S. E. 670), involved a suit against the owner of a mill for damages resulting from personal injuries to a

child who had gone to the mill on a mission to her stepfather, who was an employee of a tenant operating the mill. The injury was caused by the falling of a defective porch on the child. It was held: "The allegations of the petition showing that the minor child, for the tortious homicide of whom this suit is brought by the mother, was at the time it received the injuries that resulted in death, upon a certain porch connected with a mill of which the child's stepfather was the tenant and in possession and control, and that she went to the place for the purpose of procuring lunch from her stepfather and to accompany him home, it is sufficiently shown that the presence of the deceased upon the premises where she was killed was lawful. And it appearing from other allegations that the death of the child resulted from a failure of the landlord to repair the defects known by him to exist, liability upon his part for damages was shown." In the opinion it was said: "Whether or not the allegations of the petition are sufficient to show that the defendant owed such a duty to the child as would render him liable in damages for her homicide, on account of his permitting the porch and the supports thereof to be in their alleged dangerous condition, in case it had appeared from the petition that the defendant himself, the owner of the mill property, was actually in possession and control of the premises, it is not necessary to decide. If the owner had been in possession and control of the premises, the question just indicated would necessarily have been an issue under the pleadings, as would also the important but subsidiary question as to whether the decedent was there as a licensee or upon the implied invitation of the owner, so as to make the owner liable for his negligence in failing to keep the premises in such a state of repair as not to jeopardize any one coming there as a licensee or upon the invitation of the owner. But it does not appear that the owner was in possession and control of the premises; nor can that fact be inferred from the mere fact of ownership; for it is alleged that the stepfather of the child was a tenant of the premises of the mill property and in charge of the same. And therefore it only remains to be determined whether or not, although not at the time of the homicide in possession and control of the premises, there was any liability upon the defendant's part growing out of his relation of owner of the property and landlord to the tenant thereof. Section 3694 of the Civil Code of 1910 provides that the landlord 'is re-

sponsible to others for damages arising from defective construction, or for damages from failure to keep the premises in repair.' In the case of *Ross* v. *Jackson,* 123 *Ga.* 657 (51 S. E. 578), it is said: 'A landlord is not an insurer, but he is under a legal duty to keep the rented premises in repair, and is liable in damages to a person who receives injury while lawfully upon the premises and who is in the exercise of due care, if the injury arises because of the defective construction of a building erected on the premises by the landlord, or because of his failure to repair defects of which he knows or in the exercise of reasonable diligence ought to know. Civil Code, § 3118; *Ocean Steamship Co.* v. *Hamilton,* 112 *Ga.* 901 [38 S. E. 204], *Stack* v. *Harris,* 111 *Ga.* 149 [36 S. E. 615].' In the present case failure to repair defects after notice of the existence of the same is alleged. And there is nothing in the alleged facts to show that the child who was killed was not lawfully upon the premises at the time, . . and her presence upon the porch being lawful, the landlord, the owner of the premises, would be liable for injuries sustained by her while there, which resulted from the landlord's negligent failure to repair the defects of which he had had sufficient notice." In view of the foregoing, and the fact that the landlord had notice of the defect, the Court of Appeals erred in reversing the judgment of the trial court overruling the defendant's motion for a new trial.

*Judgment reversed. All the Justices concur, except Bell, J., disqualified.*