A91A2242. REID v. AUGUSTA-RICHMOND COUNTY
COLISEUM AUTHORITY et al.
(416 SE2d 776)

ANDREWS, Judge.

After attending a concert at the Augusta civic center, Reid was shot and severely injured outside the civic center building. Claiming that his injuries were caused by a negligent failure to keep the civic center premises and approaches safe, he sued the Augusta-Richmond County Coliseum Authority (Coliseum Authority), which owned and operated the civic center, and Sizemore Security International, Inc. (Sizemore), which was employed by the Coliseum Authority to provide services at the concert. Reid also sued the gunman, Arthur Z. Bennett, and the promoter of the concert, neither of whom are involved in this appeal. Reid appeals from the trial court's orders granting summary judgment in favor of the Coliseum Authority and Sizemore.

Construed in favor of Reid as the non-moving party, the record shows that he attended a concert at the civic center as an invitee of the Coliseum Authority. After arriving at the concert at about 8:00 p.m., Reid was confronted by Bennett inside the civic center at about 9:00 p.m. during a break in the concert. Bennett was angry because about a month earlier Reid informed the police that Bennett was involved in a series of local car thefts and burglaries. Prior to the night

of the concert, the two had fought over this same issue. The two men struggled briefly, and Bennett was heard to say to a companion, "Let me have the pouch." Reid took this comment to imply that there was a weapon of some kind in the pouch, although he saw no weapon. Reid broke away and left, and Bennett did not follow. Reid reported the incident to a uniformed Sizemore guard located inside the civic center, telling the guard that he had been in a fight, and he believed the other party might have a weapon. The Sizemore guard did not look for Bennett or otherwise investigate or report the incident.

Reid stayed at the concert for another two hours, then left the civic center building with his nephew at approximately 11:00 p.m., prior to the conclusion of the concert, and waited in or adjacent to the civic center parking lot for a ride home. Sometime between 11:00 p.m. and midnight the concert concluded. Reid and his nephew were still waiting outside the civic center when they were surrounded by a group of seven or eight individuals including Bennett, who had a gun. Reid's nephew ran back to the civic center, but Reid was unable to escape. The nephew approached another Sizemore guard at a door to the civic center, told him that someone had a gun, and someone was going to be shot, and requested that he come help. The Sizemore guard refused to leave his position. Reid's nephew saw no other police, ran back through a crowd of people in the area, and arrived just as Bennett shot Reid. After being shot, Reid was found lying, not on civic center property, but on a City of Augusta sidewalk immediately adjacent to the civic center property. The record is unclear as to where Bennett was located when he shot Reid.[1]

On the night of the concert, Sizemore guards had been hired by the Coliseum Authority to provide uniformed personnel to collect money from patrons parking in the civic center parking lot prior to the concert, take up tickets at the entrances, and to stand guard inside the civic center at the fire exits and doors to ensure there was no unauthorized entry into the building. The Sizemore guards were instructed not to leave their posts, and not to attempt to physically intervene in any altercation. Evidence showed that if a patron told a Sizemore guard assistance was needed because of a threat from another patron, they should direct that person to contact an Augusta Police Department (APD) officer on security duty at the concert. Security inside and outside the civic center during and after the concert was provided by the APD. Pursuant to the city ordinance, the Coliseum Authority was required to contact the APD to arrange for all security matters at civic center events. The APD assigned 15 officers

---

[1] For purposes of this opinion, we assume, without deciding, that Reid retained his status as an invitee to whom a duty was owed to maintain a safe premises and approaches thereto. See *Todd v. F. W. Woolworth Co.*, 258 Ga. 194 (366 SE2d 674) (1988).

and a supervisor to the concert, and retained control over the means, method and manner of providing security at the civic center.

Reid's claim that the premises was not maintained in a safe condition is based on two theories: (1) that the Coliseum Authority was negligent in failing to provide adequate security under the circumstances, and (2) that the security measures undertaken were negligently performed.

1. There is no basis in the record for the claim that the Coliseum Authority negligently failed to provide adequate security for invitees at the concert. It is undisputed that the APD provided security at the civic center against the type of danger which resulted in the injury to Reid. In doing so, the APD acted as an independent contractor determining the number of officers to be assigned, and retaining the right to control the means, method and manner of the security measures employed. The Coliseum Authority contacted the APD, discussed the event, and arranged for security to be provided. There is no evidence that the APD was not made fully aware of the circumstances of the event so it could make an informed independent judgment as to the security measures necessary under those circumstances. Where an owner does not exercise control over security services hired as independent contractors to provide security on the premises, generally the hirer is not liable for the negligence of the independent security service. *U. S. Shoe Corp. v. Jones*, 149 Ga. App. 595, 596 (255 SE2d 73) (1979).

Even if the Coliseum Authority were not insulated by the independent contractor status of the APD, there is no support in the record for a claim that inadequate security measures at the concert caused the injury. Generally, an owner is under no duty to anticipate a criminal assault against an invitee by a third party; however, the general rule does not apply where the owner has reasonable grounds for knowing that such a criminal act would be committed. *Grandma's Biscuits v. Baisden*, 192 Ga. App. 816, 817 (386 SE2d 415) (1989). In order to prove that the owner had advance notice of the danger of such an assault, evidence is admissible to show a pattern of prior substantially similar criminal assaults on the premises creating a known dangerous condition for which the owner may be held liable. Id. at 817. Here, there is no probative evidence in the record to show any such pattern of substantially similar acts sufficient to attract the Coliseum Authority's attention in advance to a dangerous condition. Moreover, this assault arose from pre-existing personal animosity between Reid and Bennett. As such, there is no evidence the attack was part of a pattern of foreseeable assaults for which advance security measures should have been taken.

A plaintiff may not claim inadequate security and avoid summary judgment by "simply point[ing] to [his] injuries as evidence that the

landowner failed to take reasonable precautions to protect [him]." *Lau's Corp. v. Haskins*, 261 Ga. 491, 493-494 (405 SE2d 474) (1991). The plaintiff is required to come forward with evidence sufficient for a reasonable jury to conclude that the owner failed to take reasonable steps to protect him against injury. Id. at 494. Here, the only evidence regarding the level of security was from the Coliseum Authority and the APD which showed that based on experience with similar events the APD provided a force of 15 officers plus an APD supervisor to patrol inside and outside the civic center during and after the concert. There is no evidence showing the level of security was below a reasonable standard of care.[2]

2. Reid further claims that Sizemore personnel, acting as employees of the Coliseum Authority, negligently failed to use reasonable care in performing security functions. Reid claims that after he reported his initial encounter with Bennett to a Sizemore guard, the guard was negligent in failing to investigate the report, or at least in failing to inform an APD officer of the fight and the possible presence of a weapon. He alleges that after the concert, the Sizemore guard informed of the incident occurring outside the civic center negligently failed to respond to prevent the shooting.

There is no evidence the Sizemore personnel were hired to perform the duties that Reid claims they negligently failed to do. The Sizemore personnel were hired to take money in the parking lot, take tickets, and guard doors inside the civic center to ensure there was no unauthorized entry into the building. They were instructed to remain at their posts, and had no authority or duty to intervene in the incidents at issue. In short, they did what they were supposed to do, and left other security matters to the APD officers hired for that function. The fact that the Coliseum Authority elected to provide uniformed Sizemore guards for a limited security function at the doors, in addition to the APD officers, does not heighten the standard of care, nor require that they undertake duties beyond that limited function. Given that the level of security against the danger at issue was adequate without the addition of the Sizemore guards, liability would result only if their response to the incidents was unreasonable, made the situation worse by increasing the danger, misled the plaintiff into the belief that they had removed the danger, or deprived the plaintiff of the possibility of help from other sources. *Lau's Corp.*, supra at 494-495. We find no evidence that the Sizemore guards were negligent under any of these criteria. Even if the guard to whom the initial re-

---

[2] Reid's attempt to create a factual question by offering the affidavit of a security expert is to no avail. The affiant's conclusions that security provisions were inadequate, or were negligently undertaken were based on assumptions taken from hearsay and other facts not supported in the record, and have no probative value.

port was made should have directed Reid to an APD officer, the record shows that Reid knew APD officers were on duty at the concert, had seen them inside the civic center that night, and failed to contact an APD officer after the Sizemore guard did nothing.

"It is the duty of a proprietor to protect an invitee from injury caused by the misconduct of employees, customers and third persons if there is any reasonable apprehension of danger from the conduct of said persons or if injury could be prevented by the proprietor through the exercise of ordinary care and diligence. Ordinarily, even where the proprietor's negligence is shown he would be insulated from liability by the intervention of an illegal act which is the proximate cause of the injury. However, the above rule has been held inapplicable if the [proprietor] . . . had reasonable grounds for apprehending that such criminal act would be committed." (Citations and punctuation omitted.) *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 876 (392 SE2d 535) (1990). Here, there is no evidence Reid told the Sizemore guard or anyone else that Bennett's attack was not a chance encounter, but personally motivated from a long-standing dispute and likely to recur if he encountered Bennett again at the concert. Based on the information provided by Reid after the first encounter, the intervening attack which arose out of personal malice against Reid was not foreseeable, thus the proprietor was not liable. See *Shockley v. Zayre of Atlanta*, 118 Ga. App. 672, 673-674 (165 SE2d 179) (1968); *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 69-70 (378 SE2d 323) (1989).

Moreover, with full knowledge of the danger which he believed to exist, Reid stayed at the concert for another two hours, and then waited outside the building for about another hour as the concert concluded, before Bennett arrived and shot him. A proprietor is not liable for a plaintiff's injuries caused by a dangerous condition on the premises if the plaintiff had equal or superior knowledge of the danger, and could have by the exercise of ordinary care, avoided the danger. *Froman v. Smith*, 197 Ga. App. 338-339 (398 SE2d 413) (1990). Reid had superior knowledge of the danger of a repeat attack, and it appears from the circumstances that he could have exercised ordinary care to avoid the second encounter. Compare *Clark v. Carla Gay Dress Co.*, 178 Ga. App. 157, 159-161 (342 SE2d 468) (1986).

There was no error in the trial court's orders granting summary judgment in favor of the Coliseum Authority and Sizemore.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED FEBRUARY 20, 1992 —
RECONSIDERATION DENIED MARCH 6, 1992 —

*William R. McCracken, William H. Lumpkin*, for appellant.

*Fulcher, Hagler, Reed, Hanks & Harper, William C. Reed, N. Staten Bitting, Jr., Burnside, Wall & Daniel, Robert C. Daniel, Jr., Hull, Towill, Norman & Barrett, Patrick J. Rice, George R. Hall*, for appellees.